IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PAMELA ANN ENGLISH, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-017-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Pamela Ann English (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 16, 1964 and was 45 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a poultry worker. Claimant alleges an inability to work beginning April 17, 2007 due to limitations resulting from lumbosacral spine disorder, including

3

degenerative disc disease with bulging discs, diabetes mellitus with peripheral neuropathy, edema, depression, and anxiety.

## Procedural History

On October 19, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 12, 2009, an administrative hearing was held by video before ALJ Lantz McClain, with the ALJ in Tulsa, Oklahoma and Claimant in McAlester, Oklahoma. On November 16, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On November 23, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) improperly discounting Claimant's treating physicians' opinions; (2) reaching an RFC where Claimant could perform sedentary work; (3) engaged in a faulty credibility evaluation; and (4) his step two findings.

**Evaluation of Claimant's Treating Physicians' Opinions**

Claimant has been examined by three physicians for evaluation of her back condition. On May 22, 2007, Claimant was evaluated by Dr. J. Arden Blough in connection with her worker's compensation case. Claimant sustained a low back injury while employed. He found Claimant had muscle spasms which was palpable in the bilateral paraspinal musculature from L3 through S1. Range of motion of the lumbar spine was found to be restricted in all planes, especially flexion and extension. Weakness against resistance was demonstrated in the lumbar flexors and extensors. Weakness was also demonstrated against resisted flexion and extension of the bilateral hips, knees, and ankles. Decreased sensation to monofilament testing was present in the L5 and S1 dermatomes of the right lower extremity. Straight leg raising test was positive on the right at 30 degrees and on the left at 30 degrees. An MRI showed disc bulges at L4-L5 and L5-S1. (Tr. 184).

Claimant was also attended by Dr. Myra Gregory and Dr.

5

Zachariah Anderson at the Stigler Health and Wellness Center. Claimant first began seeing these physicians on April 24, 2006, seeking treatment for bilateral leg pain and musculoskeletal problems. Claimant was found to have bilateral edema in the feet and legs. (Tr. 222). Claimant was prescribed pain medication and a diuretic for the condition. (Tr. 220).

On March 20, 2007, Claimant reported leg pain. She stated she could not sit for long due to sharp needle like pains. (Tr. 216). Left lower paraspinal muscle tenderness was noted with mildly reduced extension, flexion, lateral motion bilaterally, and rotation bilaterally. (Tr. 217). An MRI revealed mild degenerative signal in lower lumbar spine, L4-L5 and L5-S1 with mild annular disc bulges noted. Id.

On April 18, 2007, Claimant was again attended at the Stigler Health and Wellness Center complaining of continued back pain. Claimant was diagnosed with lumbago and spinal injections were recommended. (Tr. 211).

On May 2, 2007, Claimant was found to have moderate lordosis, tender lumbar spinous processes, left lower paraspinal muscle tenderness, moderately reduced extension, flexion, lateral motion bilaterally, rotation bilaterally, paraspinal muscle atrophy, reduced strength, and muscle tone increased. (Tr. 208). Claimant

6

was diagnosed with lumbago and prescribed multiple medications. Id.

On June 11, 2007, Claimant reported for a follow-up appointment. She continued with lower back pain. Upon examination, Claimant had a drop foot, loss of sensation, and generalized muscle weakness. (Tr. 202).

On July 24, 2007, Claimant's physician acknowledged Claimant was showing signs of moderate depression. (Tr. 201). Claimant continued to have pain in her legs and feet. She accomplished some house work so long as it does not involve lifting and bending. Other jobs like mowing she had not been able to do. Claimant reported having to stop and rest frequently. (Tr. 199).

On October 18, 2007, an examination of Claimant revealed arthritic-type changes of the joints present, joint inflammation, joint pain, restriction of joint motion, joint stiffness, and joint tenderness. Pain medication was added. (Tr. 189-90).

In an November 12, 2007 visit to her physician, Claimant was hardly able to walk. (Tr. 187).

In December of 2007, Claimant was referred to the University of Oklahoma for physical therapy and evaluation by a spine specialist. Claimant reported she was unable to afford the visit. (Tr. 247).

7

On July 10, 2008, Claimant returned to the Stigler Health and Wellness Center with continued pain. Claimant indicated the pain medication made the pain tolerable but the pain continued. (Tr. 250-51). Claimant was diagnosed with diabetes mellitus, lumbago, and depression. (Tr. 251).

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, diabetes, and hereditary peripheral neuropathy. (Tr. 11). He found Claimant retained the RFC to occasionally lift and/or carry 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 2 hours in an 8 hour workday, and sit for at least 6 hours in an 8 hour workday - or retained the RFC to perform sedentary work. (Tr. 13).

With regard to the opinion of Dr. Blough, the ALJ only gave it "some weight." The ALJ noted that while Dr. Blough opined Claimant was temporarily totally disabled under worker's compensation standards, such a finding is not dispositive for Social Security purposes.

In spite of Claimant's argument, this Court must find Dr. Blough was not a treating physician. The Tenth Circuit has explained the requirements for achieving the unique status of treating physician in stating

The treating physician's opinion is given particular weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). This requires a relationship of both duration and frequency. "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)(emphasis added). As the Supreme Court recently observed "the assumption that the opinions of a treating physician warrant greater credit that the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration." Black & Decker Disability Plan v. Nord, No. 02-469, slip op. at 9, 2003 WL 21210418 (U.S. May 27, 2003). Moreover, a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits.

A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source. Absent an indication that an examining physician presented "the only medical evidence submitted pertaining to the relevant time period," the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion. Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)(emphasis added).

In determining whether a physician's opinion is entitled to controlling weight, the Social Security Administration regulations look to the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 416.927(d)(2)(i), (ii). A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the

9

claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." Id.

Doyal v. Barnhart, 331 F.3d 758, 762-63 (10th Cir. 2003).

The duration and purpose of Dr. Blough's attending Claimant does not suggest a treating relationship. As such, the ALJ did not err in giving Dr. Blough's opinion reduced weight.

With regard to Dr. Gregory's opinions, this Court does not perceive that the ALJ gave his opinions, such that he actually rendered opinions at all, any reduced weight. The ALJ accurately set out the findings in the medical record and concluded that none of Claimant's treating physicians placed functional restrictions on her activities that would preclude sedentary work. (Tr. 14). This conclusion is supported by the medical record and is not in error.

## RFC Evaluation

Claimant also contends the ALJ failed to include restrictions contained in the medical record for her consistent complaints of pain, experiencing bad days, limited activities of daily living, need for frequent breaks to rest, the need to elevate her feet, take naps, and use the bathroom.

The ALJ expressly relied upon the opinion of Dr. Luther Woodcock, an agency physician, reflected in the Physical Residual

Functional Capacity Assessment form completed November 30, 2007. Dr. Woodcock found Claimant could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and/or pulling. (Tr. 239). He also found Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 240). Dr. Woodcock noted Claimant's limitations upon her activities of daily living but also noted all of the activities Claimant admittedly can perform with her condition. (Tr. 240). This Court finds no error in the reliance upon this opinion given the lack of restrictions found by Claimant's treating physicians.

**Credibility Analysis**

The ALJ challenged Claimant's credibility based upon (1) the fact no physician placed restrictions upon Claimant; (2) Claimant's activities of daily living are consistent with at least sedentary work; and (3) she currently works part time - work that includes standing for 4-5 hours per day. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be

11

considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds no error in the credibility analysis performed by the ALJ. He provided good and sufficient reasons for giving Claimant's subjective statements less weight.

### Step Two Findings

Claimant contends the ALJ should have included depression and anxiety as severe impairments. Claimant suggests the ALJ should have ordered a consultative examination on these conditions. The

12

ALJ proceeded through the appropriate analysis at step two, finding Claimant did not exhibit more than a mild limitation in activities of daily living, social functioning, concentration, persistence, or pace and had no episodes of decompensation. (Tr. 12). These findings are accurate in light of the medical record and limited treatment Claimant received. At no time did Claimant's treating physicians recommend that she seek further evaluation by mental health professionals.

The lack of severity of Claimant's mental health conditions is apparent in her testimony. She stated that her depression and anxiety arises from "not being able to make ends meet" and other financial worries, experienced two to three times per week. (Tr. 34).

An ALJ has the duty to "order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997). But when, as here, Claimant is represented at the hearing by counsel who fails to request a consultative exam, the ALJ's duty is triggered only when the need for a consultative exam is "clearly established in the record." Id. at 1168. This Court cannot conclude that the record clearly establishes a need for a consultative examination to evaluate

13

Claimant's depression. Her diagnosed depression was being treated with medication with nothing in the medical record to indicate it went uncontrolled or had anything but a minimal effect upon her activities.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 27th day of February, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE